UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEVERIANO MENDOZA, *individually and on behalf of others similarly situated*,<br><br>                              Plaintiff,<br><br>                    -against-<br><br>CAVALLO'S OF CHELSEA, INC. (d/b/a CLAUDIO PIZZERIA), SALVATORE NAIMO and ANTONIO COPPOLA,<br><br>                              Defendants. | 18cv11147 (VSB) (DF)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE VERNON S. BRODERICK, U.S.D.J.:**

On November 29, 2018, plaintiff Severiano Mendoza ("Plaintiff"), purportedly on behalf of himself and others similarly situated, commenced this putative collective action pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law (the "NYLL"), §§ 190 *et seq.* and 650 *et seq.*, to recover unpaid minimum wages, overtime compensation, and spread-of-hours pay; withheld tips; "tools of the trade" costs; liquidated damages; statutory damages; prejudgment interest; and attorneys' fees and costs.  Plaintiff's Complaint named three defendants:  Cavallo's of Chelsea, Inc. (d/b/a Claudio Pizzeria) ("Cavallo's"), Salvatore Naimo ("Naimo"), and Antonio Coppola ("Coppola") (collectively, "Defendants").  After Defendants failed to move, answer, or otherwise respond to the Complaint, the Honorable Vernon S. Broderick, U.S.D.J., entered a default judgment against them in Plaintiff's favor (Dkt. 33) and referred this matter to this Court to conduct an inquest concerning Plaintiff's damages (Dkt. 34).

For the reasons that follow, I recommend that Defendants be held jointly and severally liable to Plaintiff for (1) damages in the amount of $70,515.86, representing (a) $600.00 in

unpaid base wages for Plaintiff's last week of employment; (b) $28,240.58 in unpaid overtime

compensation, (c) $1,417.35 in unpaid spread-of-hours compensation; (d) $30,257.93 in

liquidated damages; and (e) $10,000.00 in statutory damages under state law; (2) prejudgment

interest in the amount of $2,253.18, plus additional prejudgment interest to be calculated by the

Clerk; and (3) attorneys' fees and costs in the amounts of $2,935.00 and $400.00, respectively.

## BACKGROUND

### A.   Factual Background

Given Defendants' default, the well-pleaded allegations contained in the Complaint, as

summarized below, are deemed to be true, except for those allegations relating to damages.  (*See*

Discussion *infra*, at Section I(A); Complaint, dated Nov. 29, 2018 ("Compl.") (Dkt. 1); *see also,*

*e.g.*, *Guaman v. J&C Top Fashion, Inc.*, No. 14cv8143 (GBD) (GWG), 2017 WL 111737, at *1

(S.D.N.Y. Jan 11, 2017).)  As specifically related to damages, the facts set out below are taken

from the Declaration submitted by Plaintiff in connection with his request for a default judgment

in his favor.  (*See* Declaration of Michael Faillace in Support of Plaintiff's Motion For Default

Judgment, dated Feb. 18, 2019 ("Faillace Decl.") (Dkt. 24), Ex. H (Declaration of

Severiano Mendoza in Support of Plaintiff's Motion for Default Judgment, dated Feb. 7, 2019

("Mendoza Decl.") (Dkt. 24-8)).)

In his Declaration, and consistent with the allegations of the Complaint, Plaintiff states

that, from approximately September 20, 2017 to November 22, 2018, he was employed, as a

tipped delivery worker, at a Manhattan establishment known as Claudio Pizzeria, located at

334 8th Avenue, that was owned, operated, and controlled by Defendants.  (*See* Mendoza Decl.

¶¶ 3-6; Compl. ¶¶ 4, 21.)  According to Plaintiff, however, he spent over 20 percent of each day

performing non-tipped work, such that his wages should not have been subject to a tip credit.

(*See* Mendoza Decl. ¶ 7; Compl. ¶¶ 67-75.)  Plaintiff claims that, despite the time he had to

spend doing non-tipped work, he was not compensated at the applicable minimum-wage rate for

the first 40 hours of his work week, and, throughout his employment at Claudio Pizzeria, he was

not compensated at one-and-a-half times the minimum wage for the hours he worked in excess

of 40 hours per week.  (*See* Mendoza Decl. ¶ 26; Compl. ¶¶ 62-65.)  Plaintiff further claims that

Defendants withheld 70 percent of all the tips customers paid him.  (*See* Mendoza Decl. ¶ 21;

Compl. ¶ 56.)

Plaintiff specifically asserts that, during the course of his employment, he worked

approximately a 10-hour shift Mondays through Thursdays and approximately an 11-hour shift

Fridays and Saturdays, for a total of 62 hours per week, receiving no breaks of any kind.  (*See*

Mendoza Decl. ¶ 11; Compl. ¶ 46.)  Plaintiff states that, "[f]rom approximately September 20,

2017 until on or about March 2018," he was paid $500 per week, and, "[f]rom approximately

March 2018 until on or about November 22, 2018," he was paid $600 per week.[1]  (*See* Mendoza

Decl. ¶¶ 13-14; Compl. ¶¶ 48-49.)  Plaintiff additionally asserts, though, that he was not paid any

wages for his last week of employment and that his pay did not vary when he worked a longer

day than usual.  (Mendoza Decl. ¶ 15; Compl. ¶ 50.)

Plaintiff also states that, for the duration of his employment, Defendants paid him his

wages in cash and never provided him with a statement of his wages or any notice, either in

English or in Spanish (Plaintiff's primary language), regarding his pay rate, his regular pay day,

---

[1] While Plaintiff's language is imprecise as to when, in "March 2018," he received the
stated pay increase, this Court notes that, in his submitted Damages Chart, Plaintiff has estimated
that date as March 16, 2018 (*see* Damages Chart), and this Court will accept that date as a
reasonable estimate.  Further, based on the totality of Plaintiffs' submissions, this Court
interprets Plaintiff's statement that he worked "until on or about" a certain date to mean that that
he worked *through* that date, and will apply that construction to its calculations herein.

or any other information about his pay.  (*See* Mendoza Decl. ¶¶ 23-27; Compl. ¶¶ 58-60.)
According to Plaintiff, Defendants failed to provide him with written information regarding
minimum-wage and overtime requirements, and also failed to maintain conspicuous notices
within his work area containing this information.  (Mendoza Decl. ¶ 25; Compl. ¶ 58.)
Moreover, Plaintiff states that Defendants did not require him to track his time, nor did
Defendants track his time themselves, by using any time-tracking device, such as a punch clock.
(*See* Mendoza Decl. ¶ 22; Compl. ¶ 57.)  Finally, Plaintiff maintains that Defendants required
him to use his own funds to repair and/or replace his bicycle, which he apparently used for
deliveries and characterizes as a "tool of the trade."  (*See* Mendoza Decl. ¶ 29; Compl. ¶ 61.)

### B.   Procedural History

As noted above, Plaintiff commenced this action by filing a Complaint on November 29,
2018.  (*See* Compl.)  After Defendants failed to respond to the Complaint, the Clerk of Court
issued Certificates of Default as to each of the three named defendants.  (Dkts. 18-20.)  On
February 18, 2019, Plaintiff filed a proposed default judgment against all Defendants.  (Dkt. 26.)
Judge Broderick proceeded to enter a default judgment against all Defendants on April 25, 2019
(Dkt. 33) and referred the case to this Court for an inquest on damages and attorneys' fees
(Dkt. 34).

In support of his request for damages, Plaintiff filed a Declaration by counsel (Faillace
Decl.), attaching as exhibits, *inter alia*, Plaintiff's Declaration (Mendoza Decl.), a chart showing
calculations of Plaintiff's claims damages (Faillace Decl., Ex. I ("Damages Chart") (Dkt. 24-9)),
and a copy of counsel's time records, showing attorneys' fees and costs incurred on this matter

(Faillace Decl., Ex. J ("Attorney Time Records") Dkt. 24-10).[2]  On May 2, 2019, this Court issued a Scheduling Order that afforded Defendants an opportunity to respond to Plaintiff's damages calculations.  (Dkt. 35.)  Although a response was due on June 3, 2019, Defendants, to date, have filed none.

On November 6, 2021, the attorney who had been representing Plaintiff in this case, Michael Faillace, Esq. ("Faillace") of the firm Michael Faillace & Associates, P.C. (the "Faillace Firm") filed a motion seeking to withdraw from that representation, informing the Court that his last day of work with the Faillace Firm would be November 7, 2021, that it was "expected that he [would] be suspended from practice by the Southern District of New York effective November 8, 2021," that the Faillace Firm was "under new ownership and ha[d] been renamed CSM Legal P.C." ("CSM Legal"), and that CSM Legal would "continue to represent the Plaintiff in this matter."  (Dkt. 38.)  Around that same time, Catalina Sojo, Esq., a partner at CSM Legal, filed a notice of appearance for Plaintiff in this matter.  (Dkt. 37.)  On November 8, 2021, the Court granted Faillace's motion to withdraw.  (Dkt. 39.)

## DISCUSSION

### I.   APPLICABLE LEGAL STANDARDS

#### A.   Default Judgment

"[D]efault is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation omitted).  Although a "'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,'" it does not reach the issue of damages.  *Bambu Sales, Inc. v.*

---

[2] Plaintiff separately submitted a "Statement of Damages" (Dkt. 25), which similarly attached the Damages Chart and Attorney Time Records (*see* Dkts. 25-1, 25-2).

*Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  In conducting a damages inquest, the court accepts as true all of the factual allegations of the complaint, except those relating to damages.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages.  *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered, and the court will then determine whether the relief flows from the facts (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))).  The burden is on the plaintiff to "introduce sufficient evidence to establish the amount of damages with reasonable certainty," *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv1369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013) (citations omitted), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013), and the plaintiff cannot satisfy this burden merely by citing to the allegations of the complaint, which are not evidence, *see Hernandez Gomez v. 4 Runners, Inc.*, 769 Fed. App'x 1, 3 (2d Cir. 2019) (Summary Order). A plaintiff is, however, entitled to have all reasonable inferences drawn in his favor based on the evidence submitted.  *See U.S. ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation).

Where a defaulting defendant has not made any submission on a damages inquest, the court must assess whether the plaintiff has provided a sufficient basis for the court to determine damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997), and the court may determine the adequacy of the plaintiff's damages claim

based on its submitted proofs alone, *see, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at \*4-5 (S.D.N.Y. Nov. 24, 2008) (adopting report and recommendation) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing).

While the court may hold a hearing to assess the amount of damages that should be awarded on default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given "much discretion" to determine whether an inquest hearing need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing" (citations omitted)).

### B.    Burden of Proof in Wage Cases, Where Defendants' Records Are Inadequate or Have Not Been Produced

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he performed work for which he was not properly compensated.'" *Santillan v. Henao*, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251, *et seq.*).  As noted by the Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves,'" *id.* at 294 (alteration in original) (quoting *Anderson*, 328 U.S. at 687), and, "'even if they do, the records may be and frequently are untrustworthy,'" *id.* (quoting *Anderson*, 328 U.S. at 687).  Employers, on the other hand, have a duty to maintain such records pursuant to Section 11(c) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to

discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer." *Id.* (alteration in original) (quoting *Anderson*, 328 U.S. at 687).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages." *Id.* As a result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly compensated." *Id.* at 293-94 (citing cases and finding, in default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)). "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id.* (internal quotation marks and citations omitted); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (holding that where an employer fails to produce evidence regarding the amount of work that the employee performed or evidence to negate "the reasonableness of the inference to be drawn from the employee's evidence," the court may "award damages to the employee, even though the result be only approximate" (quoting *Anderson*, 328 U.S. at 687-88)).

Under New York law, courts actually "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Santillan*, 822 F. Supp. 2d at 294 (quoting N.Y. Lab. Law § 196-a).

### C.    FLSA and NYLL Statutes of Limitations

Under the FLSA, the applicable statute of limitations is generally two years, except that, where the employer is found to have committed a "willful" violation of the law, the limitations period is extended to three years.  29 U.S.C. § 255(a).  Willfulness under the FLSA is found where an employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  "[A] defendant's default, in itself, may suffice to support a finding of wil[l]fulness."  *Santillan*, 822 F. Supp. 2d at 297.  The applicable limitations period for NYLL claims is six years.  N.Y. Lab. Law § 663(3).

### D.    Damages Available Under the FLSA and NYLL
### for Minimum-Wage and Overtime-Pay Violations

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week.  29 U.S.C. § 206(a).  Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed."  *Id*. § 207(a)(1); *see also, e.g.*, *Chun Jie Yin v. Kim*, No. 07cv1236 (DLI) (JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (adopting report and recommendation and noting that "[t]he FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the statutory minimum wage) for hours worked above 40 hours per week" (citations omitted)).  A plaintiff with a successful minimum-wage claim under the FLSA is entitled to recover damages up to, but not exceeding, these statutory amounts.  *See Santillan*, 822 F. Supp. 2d at 293.  On July 24, 2009, the federal minimum wage was increased from $6.55 to $7.25 per hour, *see* 29 U.S.C. § 206(a)(1)(C), and the corresponding overtime pay requirement (*i.e.*, 150 percent of that rate) was therefore increased from $9.825 to $10.875 per hour.

Under the NYLL, a prevailing plaintiff is entitled to recover "the full amount of wages owed, not just the statutory minimum wage for the hours worked." *Santillan*, 822 F. Supp. 2d at 293 (internal quotation marks and citation omitted); *see also* N.Y. Lab. Law § 198(3) ("All employees shall have the right to recover full wages . . . accrued during the six years previous to the commencing of such action."). Where an employer has, through its prior actions, shown an intent to pay a worker at an hourly rate that is greater than the minimum wage, and then the employer simply fails to pay the worker at all, the worker is entitled to the higher rate. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49-50 (E.D.N.Y. 2015) (explaining that, where the plaintiff "earned a higher wage than the minimum wage, the [c]ourt considered the pay rate in place of the minimum wage"). Where, however, a plaintiff-employee was not owed more than the minimum wage, the statutory rates apply. For the periods relevant to this action, the New York statutory minimum wage for "large employers" – *i.e.*, those with 11 or more employees – located in New York City was the following: as of December 31, 2016, $11.00 per hour and as of December 31, 2017, $13.00 per hour. N.Y. Lab. Law § 652(1)(a)(i). The minimum wage for "small employers" – *i.e.*, those with 10 or fewer employees – was the following: as of December 31, 2016, $10.50 per hour and as of December 31, 2017, $12.00 per hour. *Id.* § 652(1)(a)(ii). Regulations promulgated under the NYLL, like the FLSA, mandate payment at one-and-one-half times the regular normal rate for each hour worked by an employee in excess of 40 hours per week. 12 N.Y.C.R.R. § 146-1.4.

Where an employee earns a fixed salary, "the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). Furthermore, courts have recognized that, under the FLSA, there is a "rebuttable presumption that a weekly salary covers only the first

forty hours, unless the parties have an alternate agreement." *Pinovi v. FDD Enterps., Inc.*, No. 13cv2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015); *see also Giles v. City of New York*, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999) ("The fact that an employee regularly works 60 or more hours does not, without more, indicate that the employee's weekly salary was intended to include the FLSA overtime premium for all hours in excess of 40."). Courts in this District have extended this rebuttable presumption to apply under the NYLL, as well the FLSA. *See, e.g.*, *Pinovi*, 2015 WL 4126872, at *4; *Pastor v. Alice Cleaners, Inc.*, No. 16cv7264 (JLC), 2017 WL 5625556, at *2 (S.D.N.Y. Nov. 21, 2017); *Pinovi*, 2015 WL 4126872, at *4; *Amaya v. Superior Tile & Granite Corp.*, No. 10cv4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012). "[T]he employer can rebut the presumption by showing an employer-employee agreement that the salary covers a different number of hours." *Giles*, 41 F. Supp. 2d at 317. Absent evidence that the employer and employee understood that the fixed weekly salary included overtime hours, a court will find that the weekly salary covered only the first 40 hours. *See Pastor*, 2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9; *cf. Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335, 338 (S.D.N.Y. 2005) (finding that the FLSA's rebuttable presumption had been overcome where the plaintiff conceded that his salary covered 50 hours of work).

Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the [NYLL], [he or she] may not recover twice." *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010). Instead, "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at *3

(S.D.N.Y. May 2, 2011) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2011 WL 2038973 (May 24, 2011).  Accordingly, when calculating minimum-wage damages, the higher of either the federal or the New York minimum wage should be used for any period covered by both statutes.  *Id*.

      **E.**    **Tip Credit Notice Requirements**

Under the FLSA, an employer may take a "tip credit" on a tipped employee's wages, allowing the employee to be paid a lower minimum wage, as long as the employee's total wages, including tips, are equal to or greater than the minimum wage for non-tipped workers.  *See* 29 U.S.C. § 203(m)(2)(A).  An employer must notify an employee before taking a tip credit and, in an FLSA case, has the burden of proving that this notice was given.  *Inclan v. N.Y. Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015).  Similarly, the NYLL has a tip credit notice requirement.  12 N.Y.C.R.R. § 146-2.2.  Notice under both laws must be sufficient to apprise the employee of the tip credit provision and of the fact that their employer intends to take the credit with respect to the employee's wages.  *See Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475 (S.D.N.Y. 2015) (finding display of generic government FLSA posters to be insufficient notice); *see also Chan v. Sung Yue Tung Corp.*, No. 03cv6048, 2007 WL 313483, at *19 (S.D.N.Y. Feb. 1, 2007) (finding notice insufficient when provided in English to Spanish-speaking employees and when displayed inconspicuously), *abrogated on other grounds by Barenboim v. Starbucks Corp.*, 698 F.3d 104 (2d Cir. 2012).

Provided adequate notice is given, an employer may take a tip credit for a service employee.  29 U.S.C.A. § 203(m)(2)(A); 12 N.Y.C.R.R. § 146-1.3.  When, however, a service employee spends a substantial amount of his or her day performing non-tipped duties, an employer may not take a tip credit for that day.  *Salinas*, 123 F. Supp. 3d at 470; 12 N.Y.C.R.R. § 146-2.9 (an employer may not take a tip credit for an employee for any day he or she spends

two hours or more, or more than 20 percent of his or her shift – whichever is less – working a

non-tipped occupation).

    **F.**    <u>**Spread-of-Hours Pay Pursuant to the NYLL**</u>

       Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular

wages and overtime, an employee earning the minimum wage is entitled to receive "spread-of-

hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday

that lasts longer than 10 hours.  12 N.Y.C.R.R. § 142-2.4(a); *see also* N.Y. Lab. Law §§ 650,

*et seq.*; *Santillan*, 822 F. Supp. 2d at 298-99 ("spread-of-hours pay is only covered under New

York Labor Law, and not the FLSA").  "Spread-of-hours compensation is calculated by

multiplying the minimum wage by the number of days an employee worked more than [10]

hours." *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *6

(S.D.N.Y. Mar. 6, 2017), *report and recommendation adopted*, 2017 WL 1314123 (Apr. 6,

2017) (citation omitted); *see also* 12 N.Y.C.R.R. § 146-1.6.

       Typically, "[o]nly employees making the minimum wage rate, or less, are eligible for

spread-of-hours compensation." *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-00375 (ARR)

(RER), 2019 WL 643735, at *7 (E.D.N.Y. Feb. 12, 2019); *see also Mei Chun Poon v. Apple*

*NYC Corp.*, No. 17cv9647 (RA) (GWG), 2019 WL 75674, at *7 (S.D.N.Y. Jan. 2, 2019).

"But[,] under Section 146.1.6(d) of New York Codes, Rules and Regulations all employees in

restaurants and all-year hotels are entitled to spread-of-hours pay regardless of their regular pay

rate." *Torres v. 894 Deklab Pizza Corp.*, No. 19-CV-5750 (AMD) (SMG), 2020 WL 8768258,

at *6 (E.D.N.Y. Dec. 28, 2020) (internal quotation marks omitted) (citing, *inter alia*,

12 N.Y.C.R.R. § 146-1.6(d)).  Under the regulations, the term "restaurant" means "any eating or

drinking place where food or beverages for human consumption on the premises are offered."

12 C.R.R.-N.Y. § 480.4.  *See, e.g.*, *Brito v. Marina's Bakery Corp.*, No. 19-CV-00828 (KAM) (MMH), 2022 WL 875099, at *1-2, 15-16 (E.D.N.Y. Mar. 24, 2022) (applying restaurant definition to defendants' bakery).

### G.   Costs For "Tools of the Trade" Under the FLSA and NYLL

Under the FLSA, an employer can require employees to pay the costs of "acquiring and maintaining tools of the trade so long as those costs, when deducted from the employees' weekly wages, do not reduce their wage to below the required minimum."  *De Jesus v. P&N Cuisine Inc.*, No. 20cv03619 (RA), 2021 WL 2380065, at *3 (S.D.N.Y. June 10, 2021) (quoting 29 C.F.R. § 531.35).  "Similarly, under the NYLL, if an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage."  *Id.* (citations, quotation marks and alterations omitted); *see also* 12 NYCRR § 146-2.7(c)).  Thus, if the cost of purchasing or maintaining the equipment does reduce an employee's wage below the required minimum wage, the employee is entitled to recover from the employer for the equipment expenses.

### H.   Liquidated Damages Pursuant to the FLSA and NYLL

In addition to allowing recovery for unpaid minimum wages and overtime compensation, the FLSA provides for the recovery of liquidated damages.  *See* 29 U.S.C. § 216(b).  Under the statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages and overtime compensation that the plaintiff was improperly denied, unless the employer demonstrates that it acted in good faith and had a reasonable basis for believing that it had not violated the FLSA.  *See id.* (providing that plaintiff-employees who prevail under either Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal

amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay liquidated damages unless the employer demonstrates that it was acting in "good faith" and "had reasonable grounds for believing" that it was not acting in violation of the FLSA); *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014) (adopting report and recommendation).

"As the Second Circuit has observed, 'the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness . . . . The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception.'" *See Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich*, 121 F.3d at 71 (internal quotation marks and citations omitted)).

The NYLL also provides for the recovery of liquidated damages at a rate of 100 percent of unpaid wages, including spread-of-hours pay.  *See* N.Y. Lab. Law § 663(1); *Castillo v. Zishan, Inc.*, 16cv6166 (JGK) (HBP), 2018 WL 2084142, at *6 (S.D.N.Y. Apr. 6, 2018), *report and recommendation adopted*, 2018 WL 2081853 (May 2, 2018).  Although courts within this Circuit were previously split on the question of whether a plaintiff could recover liquidated damages under both the FLSA and the NYLL, *see Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016) (Summary Order), the Second Circuit has since clarified that double recovery is not permitted, *id.*  Rather, the "plaintiff should receive the larger of the two liquidated damages awards."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).

## I.   <u>New York State Wage Notice Requirements</u>

### 1.   <u>Wage Statements</u>

Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL that was made effective as of April 9, 2011, employers are required to

> 'furnish each employee with a statement with every payment of
> wages, listing the following' information:  (1) the dates of work
> covered by that payment of wages; (2) the employee's name;
> (3) the employer's name, address, and telephone number;
> (4) the rate or rates of pay and basis thereof; (5) gross wages;
> (6) deductions; (7) allowances, if any, claimed as part of the
> minimum wage; and (8) net wages.

*Salinas*, 123 F. Supp. 3d at 475 (quoting N.Y. Lab. Law § 195(3)).

For employer wage-statement violations occurring after February 27, 2015, the WTPA

entitles employees to recover statutory damages of "[$250.00] for each work day that the

violations occurred . . . [,] but not to exceed a total of [$5,000.00]."  N.Y. Lab. Law § 198(1-d).

## 2.    Wage Notices

In addition, the WTPA requires employers to provide a written wage notice "at the time

of hiring."  N.Y. Lab. Law § 195(1)(a).  The wage notice is required to be "in English and in the

language identified by each employee as the primary language of such employee," *id*., and must

contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any,
> claimed as part of the minimum wage, including tip, meal, or
> lodging allowances; (3) the regular pay day designated by the
> employer; (4) the employer's name; (5) any 'doing business as'
> names used by the employer; (6) the physical address of the
> employer's main office or principal place of business, and a
> mailing address if different; (7) the employer's telephone number;
> and (8) such other information as the commissioner deems material
> and necessary.

*Salinas*, 123 F. Supp. 3d at 474 (footnote omitted) (quoting N.Y. Lab. Law § 195(1)(a)).

For employer violations of this requirement occurring after February 27, 2015, the

WTPA entitles employees to recover statutory damages of "[$50.00] for each work day that the

violation occurred . . . [,] but not to exceed a total of [$5,000.00]."  N.Y. Lab. Law § 198(1-b).

J.     **Prejudgment Interest**

Generally, "[t]he decision to award prejudgment interest is discretionary and is based on the need to fully compensate the wronged party, [the] fairness of the award, and the remedial purpose of the statute involved." *Najnin v. Dollar Mountain, Inc.*, No. 14cv5758, 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015).  Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation." *Cabrera v. 1560 Chirp Corp.*, No. 15cv8194 (TPG) (DF), 2017 WL 1289349, at *8 (S.D.N.Y. Mar. 6, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 1314123 (Apr. 6, 2017).  Thus, a plaintiff who recovers liquidated damages under the FLSA is not also entitled to prejudgment interest on his or her FLSA damages.  *See, e.g.*, *id.*; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015))).  As a result, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA." *Andrade v. 168 First Ave Restaurant Ltd.*, No. 14cv8268 (JPO) (AJP), 2016 WL 3141567, at *9 n.7 (S.D.N.Y. June 3, 2016), *report and recommendation adopted*, 2016 WL 3948101 (July 19, 2016).

Based on a provision added to the NYLL in 2011, however, a plaintiff who recovers liquidated damages under the NYLL is also entitled to prejudgment interest.  *See Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (noting that, under the NYLL, a plaintiff may receive both an "award of prejudgment interest alongside a

liquidated damages award" (citing N.Y. Lab. Law § 198(1-a))); *see also Castillo v. RV Transp., Inc.*, No. 15cv0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016).  Under the state law, though, "[p]rejudgment interest is calculated . . . [only] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc.*, No. 10cv4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 2152176 (May 17, 2013).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." *Najnin*, 2015 WL 6125436, at *4; *see also* N.Y.C.P.L.R. §§ 5001, 5004.  As to the date from which interest should be found to run, "Section 5001(b) sets forth two methods of calculating prejudgment interest[]":

> First, interest may be calculated from 'the earliest ascertainable date the cause of action existed,' N.Y. C.P.L.R. § 5001(b). However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.' *Id.*

*Alvarez v. 215 N. Ave. Corp.*, No. 13cv0049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015) (adopting report and recommendation).  It is within the court's "'wide discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'" *Id.* (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

### K.   Joint and Several Liability of "Employers" Under the FLSA and NYLL

The FLSA imposes liability on "employers," a group that is "broadly define[d] [to include] 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Doo Nam Yang*, 427 F. Supp. 2d at 342-43 (quoting 29 U.S.C. § 203(d)).  "The definition of 'employer' is similarly expansive under New York law, encompassing any 'person employing any [employee].'" *Id.* (quoting N.Y. Lab. Law §§ 2(6)).  To determine whether a

party qualifies as an "employer" under both statutes' "generous definitions," the relevant inquiry is "whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case." *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999)).

"[W]hen examining the 'economic reality' of a particular situation," courts will evaluate various factors, none of which, individually, is dispositive. *Id.* These factors include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Herman,* 172 F.3d at 139). Further, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages." *Id.* (internal quotation marks and citation omitted) (finding defendants jointly and severally liable under both the FLSA and the NYLL).

## L.   Attorneys' Fees and Costs

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs." *Najnin*, 2015 WL 6125436, at *4; s*ee* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). The court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *See Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 151-52 (2d Cir. 2008). As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a

19

"'presumptively reasonable fee'" (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008))).  The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the court with sufficient information to assess the fee application, *see New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 895 n.11.  Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987).  In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay."  *Arbor Hill*, 522 F.3d at 190.  In assessing whether an hourly rate is reasonable, the court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Id.*  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the court's discretion to reduce the requested rate.  *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the court should reduce the stated hours accordingly.  *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (holding that time component should not reflect excessive hours).  In

determining whether an excessive amount of time was expended on the matter, the Court may

consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with

the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange*

*Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), and whether the work was complicated or

straightforward, *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK),

2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (considering "the straightforward nature of

the work performed [and] the relative simplicity of the issues involved" (internal quotation

marks and citations omitted)).

In addition to the lodestar amount, attorneys' fees may include "those reasonable

out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted).  These

expenses, or "costs," may include photocopying, travel, telephone costs, and postage, *Kuzma v.*

*Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), as well as filing fees and

reasonable process-server fees, *Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015

WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015

WL 4557147 (July 28, 2015).

## II.  PLAINTIFF'S DAMAGES CLAIMS

As a threshold matter, this Court notes that there is no statute-of-limitations issue in this

case.  Plaintiff's earliest claims of unpaid wages are from September 2017, and his Complaint

was filed on November 29, 2018, bringing his claims within the FLSA's two-year, and the

NYLL's six-year, statutes of limitations.

This Court also finds that, for the most part, Plaintiff's submissions are sufficient to meet

his burden of establishing his damages to a reasonable certainty, such that a hearing on damages

is not required.  *See Fustok*, 873 F.2d at 40 (noting that the district court has the discretion to determine whether a hearing is necessary).  As noted above, in the context of a default, where the defendant has neither provided any employment records, nor otherwise rebutted the plaintiff's damages claims, it is sufficient for a plaintiff to rely on his "recollection alone" to establish the hours he worked and the rates he should have been paid.  *Santillan*, 822 F. Supp. 2d at 294 (internal quotation marks and citations omitted).  In this case, this Court accepts as true, for purposes of this inquest, the assertions made in Plaintiff's Declaration, setting out his recollections regarding the hours he worked and the rates of pay he earned for that work, and finds that those assertions are sufficient to enable this Court to assess most of the damages Plaintiff claims.[3]

This Court has also carefully reviewed Plaintiff's submitted Damages Chart, reflecting his proposed damages calculation.  (Dkt. 25-1.)  That chart purports to detail the amount that Plaintiff was actually paid per week ("Credited Weekly Pay"), the amount he should have been paid for that week according to the applicable statutory minimum wage and overtime rate given his base rate of pay ("Lawful Weekly Pay"), and the difference between the two ("Underpayment Per Week").  (*Id.*)  The total amount of unpaid overtime is calculated by multiplying the number of hours over 40 that Plaintiff worked each week by the applicable overtime rate (one-and-one-half times the hourly rate).  (*Id.*)  The Damages Chart also sets out the additional amounts that Plaintiff is seeking as damages for unpaid spread-of-hours pay,

---

[3] As discussed further below, there are two categories of damages that Plaintiff seeks – specifically, damages for withheld tips and for tools-of-the-trade expenses – for which his submissions are wholly speculative, unsupported, and therefore insufficient to justify a damages award.  As to those categories, where Plaintiff, represented by experienced counsel, has not even attempted to set forth evidence to establish his damages calculation, this Court simply recommends that no damages be awarded.

withheld tips, and incurred equipment costs, as well as damages for liquidated damages, statutory damages, and prejudgment interest.  (*Id.*)

    While, in most respects, this Court does not take issue with the methodology shown in the Damages Chart, it does note, at the outset, a flawed assumption that has apparently infected many of Plaintiff's damages calculations.  Specifically, Plaintiff has implicitly assumed that the New York minimum-wage rates for "large employers" apply to Defendants, even though neither the Complaint nor Plaintiff's Declaration provides a basis for this Court to conclude that Defendants employed 11 or more people at Claudio Pizzeria, such that the establishment would qualify as a "large employer" under state law.  *See* N.Y. Lab. Law § 652(1)(a)(i).  Given the lack of any support for Plaintiff's assumption, this Court will, where applicable, apply the minimum-wage rates for "small employers," as defined by N.Y. Lab. Law § 652(1)(a)(ii).  *See Thompson v. Hyun Suk Park,* No. 18cv0006 (AMD) (ST), 2020 WL 5822455, at *7 (E.D.N.Y. Sept. 1, 2020) (where only two plaintiffs were named in the action, finding that the "small employer" minimum wage rates would apply because plaintiffs failed to plead that the defendants were large employers, and it was plaintiffs' burden to establish damages to a reasonable certainty), *report and recommendation adopted*, 2020 WL 5820547 (Sept. 30, 2020); *see also, e.g., Reyes v. Lincoln Deli Grocery Corp.*, No. 17cv2732 (KBF), 2018 WL 2722455, at *7 (S.D.N.Y. June 5, 2018) (applying lower, small-employer rate where "the Complaint [was] completely silent as to how many people [the defendant] employ[ed][] [and] therefore there [was] no evidentiary basis for the Court to calculate damages based on the higher rate").[4]  This use of the lower minimum-

---

    [4] *But see Sanchez v. Jyp Foods Inc.*, No. 16cv4472 (JLC), 2018 WL 4502008, at *9 n.13 (S.D.N.Y. Sept. 20, 2018) (even though plaintiffs had not provided information regarding the number of workers employed by defendants, giving plaintiffs the benefit of the doubt on this issue in light of defendants' default, and applying the minimum-wage rate for larger employers as requested by plaintiffs).

wage rate will modestly affect Plaintiff's proffered calculations, both in terms of whether

Plaintiff is entitled to any unpaid wages and the amount due to him for any unpaid spread-of-

hours pay.

### A.      Plaintiff's Claim For Unpaid Minimum Wages and Overtime Compensation

As set out above, this Court understands Plaintiff to be estimating that, during his

employment as a delivery worker, he was paid a fixed salary of $500 per week from September

2017 through March 15, 2018 and $600 per week from March 16, 2018 through November 22,

2018, except for the last week of that period, when he was paid nothing.  (*See* Mendoza Decl.

¶¶ 13-14; *see also supra* at n.1; Damages Chart.)  This Court accepts the stated time periods as

reasonable estimates, and it takes as true Plaintiff's statement that he consistently worked

approximately 62 hours per week, without any break.  (*See* Mendoza Decl. ¶ 11.)  Given the

absence of any evidence of an agreement between Plaintiff and his employers that his weekly

salary would cover the full 62 hours worked each week, this Court presumes that Plaintiff's $500

and $600 weekly salaries covered only the first 40 hours per week that he worked.  *See Paster*,

2017 WL 5625556, at *2-3; *Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at 9.

This means that he was paid at a base hourly rate of $12.50 ($500/week ÷ 40 hours) for the

period from September 20, 2017 through March 15, 2018, and at a base hourly rate of $15.00

($600/week ÷ 40 hours) for the period from March 16, 2018 through November 22, 2018.

As mentioned above, Plaintiff asserts that Defendants only accounted for him in their

payroll as a tipped delivery worker, despite the fact that, on a daily basis, he engaged in a

substantial amount of non-tipped work, including "cleaning bathrooms, sweeping and mopping,

washing dishes, cleaning the windows, cleaning [the] restaurant, stocking deliveries in basement,

bringing things up from the basement to the restaurant, taking out trash, [and] preparing food and

cutting vegetables." (Mendoza Decl. ¶ 7; Compl. ¶ 5.)  Additionally, Plaintiff asserts that he never received notice that Defendants were taking a tip credit against his wages.  (*See* Mendoza Decl. ¶ 19; Compl. ¶ 54.)  Due to Defendants' default, this Court accepts these statements as true and concludes that – both because of Petitioner's regular performance of non-tipped work and Defendants' failure to provide Plaintiff with notice of statutory tip-credit provisions – Defendants were not entitled to a tip credit with respect to Plaintiff's wages.  See 12 N.Y.C.R.R. §§ 146-1.3, 146-2.9; *see also Salinas*, 123 F. Supp. 3d at 465, 471.  Therefore, this Court finds Plaintiff was entitled to be paid at least the statutory minimum wage for the time that he was employed by Defendants.  *Inclan*, 95 F. Supp. 3d at 498.

Even so, however, Plaintiff's hourly rates, as calculated above, were greater than both the then-applicable federal minimum wage and state minimum wage for small employers, throughout the relevant period.  *See* 29 U.S.C. § 206(a)(1)(C) (setting minimum wage at $7.25 per hour for the period); N.Y. Lab. Law § 652(1)(a)(ii) (setting minimum wage of $10.50 per hour commencing December 31, 2016, $12.00 per hour commencing December 31, 2017, and $13.50 per hour commencing December 31, 2018).  For this reason, this Court finds that Plaintiff was not deprived of minimum wages, although he is entitled to recover for the base wages that were not paid to him during his final week of employment, as well as overtime compensation of which he was deprived throughout the time he worked for Defendants.

With respect to his unpaid base wages for the last week of employment, Plaintiff should receive $600.00, as he states that this was his regular weekly wage at that time.  *See Fermin*, 93 F. Supp. 3d at 49-50.

With respect to overtime compensation, Plaintiff should have received overtime pay (*i.e.*, one-and-one-half times his base hourly rate pursuant to the NYLL) as follows: at the hourly rate

of $18.75 (*i.e.*, $12.50 x 1.5) from September 20, 2017 through December 30, 2017 (14.43 weeks), at the hourly rate of $ 18.75 (*i.e.*, $12.50 x 1.5) from December 31, 2017 through March 15, 2018 (11 weeks), and at the hourly rate of $22.50 (*i.e.*, $15.00 x 1.5) from March 16, 2018 through November 22, 2018 (35.86 weeks), for the hours that he worked in excess of 40 hours per week during those periods.

This calculates to $5,952.38 (*i.e.*, $18.75/hour x 22 hours/week x 14.43 weeks) for the first of these periods, $4,537.50 (*i.e.*, $18.75/hour x 22 hours/week x 11 weeks) for the second of these periods, and $17,750.70 (*i.e.*, $22.50/hour x 22 hours/week x 35.86 weeks) for the final.

Thus, Plaintiff is entitled to recover **$600.00** in unpaid base wages for his final week of work and a total of **$28,240.58** in unpaid overtime compensation for work performed over the full course of his employment.[5]

### B.   <u>Plaintiff's Claim For Spread-of-Hours Compensation</u>

As discussed above, Plaintiff asserts that he was entitled to unpaid spread-of-hours compensation, under the NYLL, for each of the two days per week in which he worked more than 10 hours. Even though Plaintiff was paid more than the minimum wage as his base rate of pay, he would have been entitled to spread-of-hours pay under 12 N.Y.C.R.R. § 146-1.6(d), as he was a restaurant worker, and as he consistently worked for more than 10 hours per day. (*See* Discussion, *supra*, at Section I(F); *see also Torres*, 2020 WL 8768258, at *6).

For the period from September 20, 2017 through December 31, 2017, when the minimum wage was $10.50 per hour (*see* Discussion, *supra*, at Section I(D)), Plaintiff was entitled to **$303.03** in spread-of-hours pay (calculated as $10.50/day x 2 days/week x 14.43 weeks). For the

---

[5] This total deviates slightly from Plaintiff's proposed damages calculation as reflected in counsel's Damages Chart, as counsel used the minimum wage applicable to large employers rather than small employers, and rounded the number of weeks. (*See* Dkt. 25-1.)

period from January 1, 2018 through November 22, 2018, when the minimum wage was $12.00 per hour (*see* Discussion, *supra*, at Section I(D)), Plaintiff was entitled to **$1,114.32** in spread-of-hours pay (calculated as $12.00/day x 2 days/week x 46.43 weeks).  In total, Plaintiff is entitled to recover unpaid spread-of-hours compensation in the amount of **$1,417.35**.[6]

### C.   Plaintiff's Claim For Withheld Tips

Plaintiff also seeks an award for the tips that, he contends, Defendants wrongfully withheld from him.  In his submitted Damages Chart, Plaintiff lists these tips as $3,500.00 for the 14-week period from September 20 through December 30, 2017, $2,750.00 for the 11-week period from December 31, 2017 through March 15, 2018, and $9,000.00 for the 36-week period from March 16, 2018 through November 22, 2018 – for a total of $15,250.00 over the 61-week course of his employment.  (*See* Damages Chart, at 2.)   Essentially, given the number of weeks in each period, it appears that the figures in the Damages Chart are based on a uniform estimate that, in every week that he worked for Defendants, Plaintiff earned $250 in tips, which Defendants withheld from him.  While a plaintiff is generally be entitled to reimbursement for unlawful deductions to his tips, *see Gomez v. MLB Enterprises, Corp.*, No. 15cv3326(CM), 2018 WL 3019102, at *6 (S.D.N.Y. June 5, 2018) (citing NYLL § 196-d), no type of actual damages may be awarded absent evidence allowing the amounts to be calculated to a reasonable certainty, *see generally RGI Brands,* 2013 WL 1668206, at *6.  Here, Plaintiff (or, more likely, his counsel) has simply inserted dollar figures into his Damages Chart, with absolutely no support for those figures.  Indeed, Plaintiff's Declaration does not contain even an *estimate* of the amount of tips he received, for work that he performed during his employment.  Although a plaintiff in a

---

[6] This amount also deviates slightly from Plaintiff's calculated amount, for the same reasons described *supra*, at n.5.

wage-and-hour case may meet his burden of proof by relying on "recollection alone" in the event of a defendant's default (*see* Discussion, *supra*, at Section I(B)), is it not enough to present the Court with a request for an amount of actual damages, without even a stated "recollection" to support it.  Accordingly, as Plaintiff has not satisfied his burden of demonstrating the amount of his withheld tips to a reasonable certainty, I recommend that he not be awarded damages for this alleged loss.

   **D.**  <u>**Plaintiff's Claim For Equipment Costs**</u>

   Plaintiff further suggests that he should be compensated for Defendants' failure to reimburse the costs and expenses for purchasing and/or maintaining a bicycle, as needed to perform his job duties.  (*See* Mendoza Aff. ¶ 20; Compl. ¶ 61.)  As noted above, the FLSA and NYLL provide that a plaintiff may recover the costs of such expenses if they were high enough to bring the employee's wage below the required minimum wage.  Here again, however, Plaintiff's Declaration is devoid of any details.  Indeed, it is not even clear if he had to purchase a bicycle, or merely pay to keep a previously purchased bicycle in good repair, and he has provided no indication of the amount of money that he had to expend for any particular purpose. Instead, Plaintiff (or his counsel) has merely included a round number of $500.00 in his damages calculation for "tools of the trade" (*see* Damages Chart), without any explanation as to how, or over what period of time, that particular sum was spent (*see generally* Mendoza Decl.). Certainly, Plaintiff has failed to make any showing as to how any amounts that he spent on tools of the trade served to reduce his paid wages below the minimum wage.  (*See id*.)  For these

reasons, as with his claim for withheld tips, Plaintiff has not demonstrated an entitlement to any damages for equipment costs, and I recommend that none be awarded.

### E.     Plaintiff's Claim For Liquidated Damages

As discussed above, both the FLSA and the NYLL provide for the recovery of liquidated damages.  Indeed, both statutes mandate that the Court award liquidated damages to a prevailing plaintiff, unless the defendant employer demonstrates that it acted in good faith or had a reasonable basis to believe that it was acting in compliance with the law.  (*See* Discussion, *supra*, at Section I(H).)  Here, given their default, Defendants have not met their burden of proving that they acted in good faith, *see Galeana*, 120 F. Supp 3d at 317, and thus liquidated damages are available under the provisions of both statutes, 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).

Under New York law, Plaintiff is entitled to recover 100 percent of his unpaid wages, including unpaid spread-of-hours compensation, from the entire period covered by his claim, in liquidated damages.  *See* N.Y. Lab. Law § 663(1).  Plaintiff is due $600.00 in unpaid base wages, $28,240.58 in unpaid overtime compensation, and $1,417.35 in unpaid spread-of-hours compensation.  Therefore, in total, Plaintiff is entitled to **$30,257.93** in liquidated damages under the NYLL.[7]

### F.     Plaintiff's Claim for Statutory Damages Under the WTPA

Plaintiff contends that, throughout the duration of his employment, Defendants failed to provide him with wage statements and wage notices in violation of the WTPA, and that he is therefore entitled to additional statutory damages pursuant to the NYLL.  (Mendoza Decl. ¶¶ 23-25; Compl. ¶¶ 55-60, 115-118.)  For these failures, Plaintiff seeks the maximum allowable

---

[7] This amount also deviates slightly from Plaintiff's calculated amount, for the same reasons described *supra*, at n.5.

statutory damages of $5,000 for Defendants' failure to provide wage statements, and $5,000 for their failure to provide wage notices.  (*See* Damages Chart; Compl. ¶¶ 116, 119; *see also* Faillace Decl. ¶ 69.)

As laid out above, the WTPA imposes statutory damages of $250 per work day, capped at $5,000, for the failure to provide employees with compliant wage statements, where the violations occurred after February 27, 2015.  (*See* Discussion, *supra*, at Section I(I)(1); *see also* N.Y. Lab. Law § 198(1-d).)  Thus, accepting Plaintiff's claim that he was employed by Defendants for more than 20 days between September 20, 2017 and November 22, 2018 and, that he never received a wage statement from Defendants (*see* Mendoza Decl. ¶¶ 5, 24; Compl. ¶ 59), he is entitled to the maximum $5,000 in statutory damages for these wage-statement violations.

The WTPA also imposes statutory damages of $50 per work day, again capped at $5,000, for the failure to provide employees with compliant wage notices, where the violations occurred after February 27, 2015.  (*See* Discussion, *supra*, at Section I(I)(2); *see also* N.Y. Lab. Law § 198(1-b).)  Accepting Plaintiff's claim that he did not receive a wage notice for the entire duration of his employment (*see* Mendoza Decl. ¶¶ 5, 25; Compl. ¶ 60), which included more than 100 days after September 22, 2017, he is also entitled to the maximum of $5,000 in statutory damages for wage-notice violations.  *See Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12cv9353 (PAC), 2015 WL 1881080, at *4 (S.D.N.Y. Apr. 24, 2015); *Cuzco v. F & J Steaks 37th St. LLC*, No. 13cv1859 (PAC), 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014).

This Court therefore recommends that Plaintiff be awarded the requested **$10,000** in statutory damages for Defendants' failure to provide him with both wage statements and wage notices during the time periods for which such damages are available.

G.    **Plaintiff's Claim for Prejudgment Interest**

Plaintiff also seeks prejudgment interest on his unpaid wages and spread-of-hours pay.

(*See* Damages Chart; *see also* Faillace Decl. ¶¶ 60, 63.)  As noted above, the NYLL provides

that a plaintiff may recover both liquidated damages and prejudgment interest.  *See Hernandez*,

2016 WL 3248493, at *35; *Castillo*, 2016 WL 1417848, at *3.  While "courts do not award

statutory prejudgment interest on any portion of the recovery for which liquidated damages were

awarded under the FLSA," *Andrade*, 2016 WL 3141567, at *9 n.7, where, as here, a plaintiff is

entitled to be awarded liquidated damages pursuant to the NYLL, the plaintiff is "eligible for an

award of prejudgment interest on the full . . . damages arising out of his . . . wage claims."

*Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14cv10234 (JGK) (JLC), 2016 WL 4704917,

at *18 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258 (Nov.

21, 2016).  As set out above, prejudgment interest under the NYLL is awarded at a rate of nine

percent per annum, *Najnin*, 2015 WL 6125436, at *4; N.Y.C.P.L.R. § 5004, and may be

calculated from either the "earliest ascertainable date the cause of action existed" or "from a

single reasonable intermediate date," where damages were incurred at various times,

N.Y.C.P.L.R. § 5001(b).

Plaintiff is entitled to prejudgment interest on his damages for unpaid base wages, unpaid

overtime, and unpaid spread-of-hours compensation, but not on his statutory damages for wage-

statement and wage-notice violations.  As Plaintiff's compensation was not consistent over the

course of his employment, this Court has opted to calculate such prejudgment interest from the

midpoint date of Plaintiff's employment (April 22, 2018), to the date of his most recent damages

submissions (February 18, 2019).  Applying the prejudgment interest rate of nine percent per

annum to this principal amount yields prejudgment interest in the amount of **$2,253.18**

($30,257.93 x .09 x (302/365)).  I recommend that Plaintiff be awarded that amount in prejudgment interest on damages arising out of his wage claims, up to the date of Plaintiff's most recent damages submissions, with additional interest to be calculated by the Clerk of Court, at a rate of nine percent per annum, from February 18, 2019 through the date of entry of final judgment.

      **H.**      <u>**Joint and Several Liability**</u>

Plaintiff requests that defendants Claudio Pizzeria, Naimo, and Coppola be held jointly and severally liable for the damages owed to Plaintiff in this action.  (*See* Compl. ¶¶ 27-36.)  Under both the FLSA and NYLL, all those qualifying as "employers" – *i.e.*, those who "possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case," *Doo Nam Yang*, 427 F. Supp. 2d at 342 (internal quotation marks and citation omitted) – may be held liable for statutory violations, *id.*  In this case, Plaintiff's well-pleaded allegations regarding liability are sufficient to support a finding that, during the period when Plaintiff was an employee at the business in question, Defendants each had control over the "economic reality" of Plaintiff's employment.

Plaintiff has alleged that both of the defendants "determined the wages and compensation of [] employees . . . established the schedules . . . maintained employee records, and had the authority to hire and fire employees."  (Compl. ¶¶ 25-26.)  Plaintiff has also alleged that defendants Naimo and Coppola not only possessed an "ownership interest" in Claudio Pizzeria (*id.* ¶ 28), but also had "operational control" of the corporation (*id.*).  Taking these allegations as true upon Defendants' default, this Court finds that Claudio Pizzeria, Naimo, and Coppola should all be found to have been employers of Plaintiff, such that it would be appropriate for the Court to hold them jointly and severally liable on the judgment.

III.   **ATTORNEYS' FEES AND COSTS**

Plaintiff seeks $2,935.00 in attorneys' fees for 13.6[8] hours of work performed by counsel and paralegal in connection with this action, and litigation costs in the amount of $563.00. (Dkt. 25-2.)  For the reasons that follow, the Court recommends that attorneys' fees be awarded in the amount of $2,935.00, and that litigation costs be awarded in the reduced amount of $400.00.

A.   **Reasonable Hourly Rates**

As noted above, during the period for which fees and costs have been requested, Plaintiff was represented by Faillace of the Faillace Firm.  (*See* Compl.; Faillace Decl. ¶ 88(a).)  In addition, according to Faillace, the firm assigned a paralegal to the case (whom Faillace has not named, and who is identified only in the firm's Attorney Time Records only as "PL."  (*See* Faillace Decl. ¶ 88(b).)

At the time of Plaintiff's inquest submission, Faillace was the managing partner of the Faillace Firm, and had been practicing employment law since 1983.  (*See id.* at ¶ 88(b)(i).)  For periods of time, he had taught employment-discrimination law as an adjunct professor at Fordham University School of Law and Seton Hall University Law School, and he described himself in his Declaration as a "nationally renowned speaker and writer on employment law." (*Id.*)  He represented that, at the time of Plaintiff's submission, he billed his time at a rate of $450.00 per hour.  (*Id.*)  The paralegal at the Faillace Firm billed at an hourly rate of $100 per hour.  (*Id.*)

---

[8] In the provided Attorney's fees and costs sheet (Dkt. 25-2), it mistakenly states that a paralegal billed 100 hours for work done filing the complaint and requesting a summons.  As explained below, the Court presumes that is a typographical error and that only one hour was billed.

This Court notes that, at this point, Faillace has been suspended from practice from this Court – a fact that would certainly impact his current reputation and could thus have bearing on the reasonableness of his proffered billing rate. *See Blum*, 465 U.S. at 895 n.11 (stating that, among the factors that bear on the reasonableness of an attorney's hourly rate is his or her reputation). Still, the work that was performed by Faillace in this case was performed well before his suspension, and, for similar work, this Court has previously recommended approval of an hourly rate of $450 for Faillace, given his many years of experience in employment litigation. *See Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14cv7850 (VEC) (DF), 2016 WL 8650464 at *19 (S.D.N.Y. Nov. 7, 2016), *report and recommendation adopted*, 2017 WL 1194682 (Mar. 30, 2017); *see also, e.g.*, *De La Cruz v. Trejo Liquors, Inc.*, No. 16cv4382 (VSB) (DF), 2019 WL 9573763, at *18 (S.D.N.Y. Sept. 10, 2019) (noting that, "[f]or partners or heads of small law firms practicing in this area, the Court has usually approved hourly rates in the $300 to $450 range." (citations omitted)), *report and recommendation adopted,* 2020 WL 4432298 (July 30, 2020). Rather than adjust Faillace's rate retroactively for recent reputational problems, this Court recommends that this rate of $450 per hour be approved in this case as reasonable.

This Court has previously recommended approval of a $100 hourly rate for paralegals, and finds no reason to deviate from such recommendation here. *See, e.g.*, *Cruz v. JJ's Asian Fusion Inc.,* No. 20 CV 5120 (MKB) (RML), 2022 WL 687097, at *10 (E.D.N.Y. Jan. 11, 2022) (recommending that the paralegal's rate at the Faillace Firm be reduced to $100 per hour in wage-and-hour case), *report and recommendation adopted,* 2022 WL 577954 (Feb. 25, 2022); *Guo v. Tommy's Sushi, Inc.*, No. 14cv3964 (PAE), 2016 WL 452319, at *11, *15 (S.D.N.Y. Feb. 5, 2016) (reducing requested paralegal rate from $150.00 per hour to $100.00 per hour in an FLSA and NYLL case).

### B.   Reasonable Hours

In support of Plaintiff's request for attorneys' fees, the Faillace Firm has provided the Court with a copy of its time records, which appear to have been maintained contemporaneously during the course of the litigation, and which show the hours that counsel and the paralegal spent working on the matter.  (*See* Dkt. 25-2.)  In total, the Firm billed 13.6 hours to this matter.  (*Id.*) All but one of the time entries describe reasonable tasks that appear to have been performed within a reasonable amount of time.  (*See id*.)  The one entry with which the Court takes issue appears to include a typographical error, as it states that the paralegal spent 100 hours on "[f]il[ing] [the] Complaint and request[in]g summonses to be issued."  (*Id.*)  This Court assumes the correct amount is actually 1 hour, especially given that the amount the paralegal billed for this task was $100, which was the paralegal's hourly rate.  (*Id.*)

### C.   Lodestar Calculation

Using the reasonable rates and hours described above would result in the following lodestar calculation:

| Attorney | Reasonable Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|
| Faillace | $450.00 | 4.5 | $2,025.00 |
| Paralegal | $100.00 | 9.1 | $910.00 |
| | | | **Total:  $2,935.00** |

This Court finds no exceptional circumstances here that would warrant deviation from the lodestar, *see Perdue v. Kenny A. ex rel. Wynn*, 559 U.S. 542, 552 (2010), and therefore recommends that Plaintiff be awarded attorneys' fees in the amount of **$2,935.00**.

### D.   Costs

Plaintiff additionally seeks litigation costs, in the amount of $563.00, including a $400 filing fee and three process-server fees, one for $63.00 and two for $50.00.  (Dkt. 25-2.)  While this Court takes judicial notice of the filing fee and therefore finds it to be compensable, *see*

*Guo v. Tommy's Sushi, Inc.*, No. 14cv3964 (PAE), 2016 WL 452319, at *7 (S.D.N.Y. Feb. 5, 2016), this Court does not recommend that the process-server fees be awarded.  Apart from its own invoice itemizing these fees, the Faillace Firm has failed to submit any underlying documentation supporting that the fees were incurred.  It is Plaintiff's burden to demonstrate that the litigation costs sought were reasonably incurred and are properly recoverable from the defaulting Defendants, and in the absence of supporting documentation concerning the requested process-server fees, Plaintiff has not met his burden with respect to those litigation costs.  *Pastor*, 2017 WL 5625556, at *9 (declining to award process-server fees where the plaintiff had failed to submit underlying documentation from its counsel (the Faillace Firm), supporting that the fees were incurred).  This Court therefore recommends that only **$400.00** in costs be awarded.

## <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that Defendants be held jointly and severally liable for:

1. Damages in the amount of $70,515.86, representing:

   a. $600.00 in unpaid base wages

   b. $28,240.58 in unpaid overtime compensation;

   c. $1,417,35 in unpaid spread-of-hours compensation;

   d. $30,257.93 in liquidated damages; and

   e. $10,000.00 in statutory damages under the WTPA;

2. Prejudgment interest in the amount of:

   a. $2,253.18 up to February 18, 2019 (the date that Plaintiff filed his damages submission); and

   b. additional prejudgment interest, to be calculated by the Clerk of Court at the rate of nine percent

per annum from February 18, 2019 to the date of
entry of final judgment;

3.        Attorneys' fees in the amount of $2,935.00; and

4.        Costs in the amount of $400.00.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).

Such objections, and any responses to objections, shall be filed with the Clerk of Court, with

courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick, U.S.D.J.,

United States Courthouse, 40 Foley Square, Room 415, New York, New York 10007, if his

Individual Practices require it.  Any requests for an extension of time for filing objections must

be directed to Judge Broderick.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14)

DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE

APPELLATE REVIEW.  *See Thomas v. Arn*, 474  U.S. 140, 155 (1985); *IUE AFL-CIO Pension

Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants by means reasonably calculated to reach them, and to file proof of such service on the Docket of this action.

Dated:  New York, New York
       April 12, 2022

Respectfully submitted,

_____

DEBRA FREEMAN
United States Magistrate Judge

<u>Copies to</u>:

Plaintiff's counsel (via ECF)